**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MOHAMED N. SALEM,<br><br>Petitioner,<br><br>v.<br><br>JOHN TSOUKARIS, *et al.*,<br><br>Respondents. | Civil Action No. 25-17414 (MAS)<br><br>**OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on two motions filed by Petitioner Mohamed N. Salem ("Petitioner"). The first is Petitioner's Motion for Reconsideration of the Court's February 18, 2026, Opinion and Order denying his Amended Habeas Petition. (ECF No. 35.) The second, docketed as a "Second Motion for Reconsideration," asks the Court to supplement the first Motion with a May 11, 2026, approval notice from United States Citizenship and Immigration Services ("USCIS") or, alternatively, to grant relief from judgment under Federal Rule of Civil Procedure 60(b). (ECF No. 38.) Respondents (the "Government") opposed both Motions. (ECF Nos. 37, 39.) The Court has carefully considered the parties' submissions and decides the Motions without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the following reasons, the first Motion shall be denied. The second Motion shall be granted to the extent that it seeks leave to supplement the record with the approval notice and shall otherwise be denied.

## I. BACKGROUND

The Court assumes familiarity with the background set out in its February 18, 2026, Opinion (the "Opinion") (ECF No. 33) and recounts only what is necessary to resolve the present motions. Petitioner is a native and citizen of Egypt. (ECF No. 37-4 at 2.) On October 9, 2024, he was taken into immigration custody at or near Otay Mesa, California. (ECF No. 33 at 1; ECF No. 37-4 at 2.) The next day, a Border Patrol agent completed and served on Petitioner a Form I-860, Notice and Order of Expedited Removal, headed "DETERMINATION OF INADMISSIBILITY." (ECF No. 37-4 at 2.) Invoking section 235(b)(1) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1225(b)(1), the form records the Department of Homeland Security's ("DHS") determination that Petitioner is inadmissible under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I), because, on October 9, 2024, he "illegally entered the United States at/near Otay Mesa, California, and [was] not inspected by an Immigration Officer" and lacked a valid entry document. (*Id.*) The form also contains a signed order-of-removal block, a supervisor's signature, and a certificate of personal service dated October 10, 2024.[1] (*Id.*)

ICE's detention records reflect that Petitioner was booked into the Otay Mesa Detention Center on October 15, 2024; transferred to a facility in Folkston, Georgia, on October 18, 2024; and "Released - Paroled" on October 26, 2024. (ECF No. 39-1 at 1.) As the Opinion explained, the Government paroled Petitioner into the United States for one year under 8 U.S.C. § 1182(d)(5)(A) while his credible fear process was pending. (ECF No. 33 at 2.) Petitioner agrees that ICE issued him one-year parole on October 26, 2024. (ECF No. 35 at 5-6.) When that period

[1] The Opinion observed that Petitioner "was not given a final expedited removal order at that time . . . as the credible fear review process had not yet been completed." (ECF No. 33 at 1.) Nothing in the October 10, 2024, form is inconsistent with that observation, and the Court need not decide whether the order block on that form ever became an enforceable final order. As explained below, Petitioner's detention authority does not depend on it.

expired, Petitioner was taken back into ICE custody. (ECF No. 33 at 2.) DHS's records show that he was booked into the Elizabeth Contract Detention Facility on November 13, 2025. (ECF No. 39-1 at 1.)[2]

According to Petitioner, a second Form I-860 is dated November 20, 2025; a credible fear interview took place on November 24, 2025; and a negative credible fear determination and referral to an immigration judge followed on December 1, 2025. (ECF No. 35 at 5-6; *see also* ECF Nos. 29-1, 29-5.) On January 2, 2026, an immigration judge overruled the negative determination and found that Petitioner has a credible fear of persecution. (*See* ECF No. 33 at 2 (citing ECF No. 29-3 at 2).) DHS then issued a Notice to Appear ("NTA") dated January 5, 2026, placing Petitioner in removal proceedings under INA § 240, 8 U.S.C. § 1229a. (ECF No. 35 at 7.)

On March 13, 2026, an immigration judge found Petitioner inadmissible under INA §§ 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I), denied his applications for asylum, withholding of removal, and protection under the Convention Against Torture, and ordered him removed to Egypt. (ECF No. 37-2 at 4, 6.) Petitioner appealed to the Board of Immigration Appeals ("BIA"), which acknowledged receipt of the appeal on March 31, 2026.[3] (ECF No. 37-3 at 2.) The removal order is therefore not administratively final. (ECF No. 37 at 2.) In early April 2026, Petitioner was transferred to Arizona; the Government advised the Court that he was booked into the Florence

[2] The Opinion recited that Petitioner was arrested on November 5, 2025, a date taken from Petitioner's own memorandum of law. (ECF No. 33 at 2 (citing ECF No. 9 at 3).) Both parties now identify November 13, 2025, as the date of re-detention. (ECF No. 35 at 5-6; ECF No. 39 at 1, 3.) That is also the date reflected in ICE's detention history (ECF No. 39-1 at 1) and the date on which Petitioner filed his habeas petition (ECF No. 1). The Court adopts that date. The discrepancy is immaterial to the analysis.

[3] The Government's correspondence states that Petitioner filed his appeal on April 3, 2026. (ECF No. 37 at 2.) The BIA's filing receipt reflects that it received the appeal on March 31, 2026, and issued its notice on April 3, 2026. (ECF No. 37-3 at 2.)

Staging Facility in Florence, Arizona, on April 6, 2026.[4] (ECF No. 37 at 2; ECF No. 37-1 at 2; ECF No. 39-1 at 1.) As of June 22, 2026, ICE's records showed Petitioner in custody at the Florence Correctional Center. (ECF No. 39-1 at 1.)

The Opinion denied the amended petition. Following *Faqirzada v. Rokosky*, No. 25-16639, 2026 WL 63614, at *2-3 (D.N.J. Jan. 8, 2026), the Court held that Petitioner—an applicant for admission who was taken into custody at the border, found inadmissible, and paroled under 8 U.S.C. § 1182(d)(5)(A)—remained subject to mandatory detention under § 1225(b)(1) when his parole ended and he was returned to custody. (ECF No. 33 at 3-5.) The Court further held that it lacks jurisdiction to review the decision to end parole (*id.* at 4-5); that Petitioner had received the process the relevant statutes provide (*id.* at 5); that Special Immigrant Juvenile ("SIJ") status and 8 U.S.C. § 1232(c)(2)(B) do not exempt him from mandatory detention (*id.* at 5-6 & n.1); and that, at roughly three months, his detention was not yet so prolonged as to offend due process (*id.* at 6-7).

Petitioner moved for reconsideration on March 17, 2026. (ECF No. 35.) He argues that the Opinion rested on an inaccurate chronology; that the record does not show he fell within the class of noncitizens described in *Castro v. U.S. Department of Homeland Security*, 835 F.3d 422, 425 (3d Cir. 2016); and that recent decisions of this District, chiefly *Lopez Salas v. Soto*, No. 25-17339 (D.N.J. Feb. 21, 2026), show that detention after parole and re-custody is governed by 8 U.S.C. § 1226(a). (ECF No. 35 at 5-11.) The Government opposed on April 7, 2026, and submitted the October 10, 2024, Form I-860. (ECF Nos. 37, 37-4.)

---

[4] The Government's correspondence describes the facility Petitioner left as the Delaney Hall Detention Facility and states that the transfer occurred on April 5, 2026. (ECF No. 37 at 2.) The Form I-830E and ICE's detention history, however, identify the Elizabeth Detention Center, and the latter reflects a booking into the Florence Staging Facility on April 6, 2026, at 2:08 a.m. (ECF No. 37-1 at 2; ECF No. 39-1 at 1.) The discrepancy does not affect the analysis.

On May 25, 2026, Petitioner filed his second motion. (ECF No. 38.) It relies on a Form I-797 approval notice dated May 11, 2026, reflecting that USCIS approved Petitioner's Form I-360 petition for SIJ classification, which USCIS received on October 23, 2025. (*Id.* at 16.) Petitioner asks the Court to supplement the first motion with that notice or, alternatively, to grant relief under Rule 60(b); to require the Government to identify the authority for his detention and to produce certain custody records; and to order his release under conditions or, at a minimum, a prompt individualized custody hearing. (*Id.* at 2, 13-14.) The Government opposed on June 22, 2026. (ECF No. 39.) The docket reflects no submission since and is ripe for disposition.

## II. <u>LEGAL STANDARD</u>

A motion for reconsideration of a final judgment may be brought under Federal Rule of Civil Procedure 59(e) and Local Civil Rule 7.1(i). Rule 59(e) permits a motion to alter or amend a judgment within twenty-eight days of its entry. Fed. R. Civ. P. 59(e). Local Civil Rule 7.1(i) requires the movant to identify "the matter or controlling decisions which the party believes the Judge has overlooked," L. Civ. R. 7.1(i), and sets a fourteen-day deadline "[u]nless otherwise provided by statute or rule (such as Fed. R. Civ. P. 50, 52 and 59)." *Id.* In a habeas case, a timely Rule 59(e) motion is part of the petitioner's first habeas proceeding rather than a second or successive petition. *Banister v. Davis*, 590 U.S. 504, 507-09 (2020).

A party seeking reconsideration must show "at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). The scope of a motion for reconsideration is "extremely limited": such motions are "not to be used as an opportunity to relitigate the case; rather, they may be used only

to correct manifest errors of law or fact or to present newly discovered evidence." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011) (citation omitted). Mere disagreement with the Court's ruling is not a ground for reconsideration.

Rule 60(b) separately authorizes relief from a final judgment for enumerated reasons, including "mistake," Fed. R. Civ. P. 60(b)(1)—a term that encompasses a judge's legal error, *Kemp v. United States*, 596 U.S. 528, 533-34 (2022)—and for "any other reason that justifies relief," Fed. R. Civ. P. 60(b)(6). Relief under Rule 60(b)(6) requires "extraordinary circumstances," which "will rarely occur in the habeas context." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005). In immigration-detention cases, a detainee's Rule 60(b) motion is treated as a new habeas petition only if it seeks vindication of a "claim"; new or later-ripened arguments offered as reasons for reopening the judgment do not make it one. *See Argueta Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 442-44 (3d Cir. 2021).

## III. DISCUSSION

### A. The First Motion for Reconsideration (ECF No. 35)

#### 1. Timeliness and the governing vehicle

The Opinion and the accompanying Order denied the Amended Petition and closed the file. (ECF Nos. 33, 34.) That Order is a "judgment." *See* Fed. R. Civ. P. 54(a). Petitioner moved twenty-seven days later. (ECF No. 35.)[5] That is outside Local Civil Rule 7.1(i)'s fourteen-day window but within the twenty-eight days allowed by Rule 59(e). Because the local rule yields to Rule 59 by its terms, the motion is timely, and the Court considers it on the merits under the *Max's Seafood*

[5] Petitioner's brief states that the motion "is filed on March 11, 2026" (ECF No. 35 at 5), but the docket reflects that it was filed on March 17, 2026, which is also the date on the motion and brief (*id.* at 1, 11). Either date falls within the twenty-eight-day period.

standard. Petitioner's alternative request under Rule 60(b)(1) (ECF No. 35 at 1, 5) requires the same showing—a "mistake" of fact or law—and fails for the reasons that follow.

### 2. The record does not show that the Opinion rested on a mistaken chronology

Petitioner's lead argument is that the Opinion's detention holding "depends on a specific factual premise"—"that Petitioner remained in a final, continuously operative § 1225(b)(1) posture from his October 2024 border encounter forward"—and that the record contradicts it. (ECF No. 35 at 7.) The Opinion did not rest on that premise. The Court did not hold that Petitioner was subject to a final order of removal; it said that he "was not given a final expedited removal order" in October 2024 because "the credible fear review process had not yet been completed." (ECF No. 33 at 1.) The holding rested on three findings: that Petitioner was taken into custody when he attempted to enter the United States and was determined to be inadmissible, such that he was subject to expedited removal under § 1225(b)(1) absent a showing of credible fear; that he was then paroled under § 1182(d)(5)(A) rather than released outright; and that, when his parole ended, the statute required him to "return or be returned to the custody from which he was paroled," where his case would "continue to be dealt with in the same manner as that of any other applicant for admission." (*Id.* at 3-4 (quoting 8 U.S.C. § 1182(d)(5)(A)).) None of those findings depends on a "final, continuously operative" removal order.

Petitioner next argues that the only Form I-860 in the record is the one dated November 20, 2025, and that the copy before the Court does not show a completed order, a supervisor's approval, or a certificate of service. (ECF No. 35 at 7-8 (citing 8 C.F.R. § 235.3(b)(2)(i), (b)(7)).)[6]

[6] Petitioner cites "Ex. A" (the NTA) and "Ex. B" (the November 20, 2025, Form I-860), but the docket reflects no attachments to ECF No. 35. The Court understands those citations to refer to the NTA and Form I-860 that the Government filed with its Response to the Amended Petition (ECF Nos. 29-1, 29-2) and has considered them on that basis.

That is no longer so. The Government has now filed the Form I-860 that DHS issued on October 10, 2024. (ECF No. 37-4 at 2.) It records a determination of inadmissibility under § 1225(b)(1) and bears each feature Petitioner says was missing from the later form: an order-of-removal block signed by the issuing officer; the signature of a supervisor, time-stamped on October 10, 2024, at 11:33 a.m., before the issuing officer's own signatures, which are time-stamped 12:12 p.m.; and a certificate showing personal service on Petitioner that day. (*Id.*) Whatever role the cited regulations might play in a challenge to the validity of an expedited removal order—a question not presented here—the October 10, 2024, form answers Petitioner's factual objection.[7]

Petitioner's remaining chronological points are likewise not persuasive. That Petitioner was re-detained on November 13 rather than November 5, 2025, or was encountered "Inland" rather than at an ICE appointment (ECF No. 35 at 6), has no bearing on the governing statute. Section 1182(d)(5)(A) provides that, when parole ends, the noncitizen "shall forthwith return or be returned to the custody from which he was paroled." It says nothing that makes the noncitizen's status depend on where DHS finds him. The relevant custody—the custody from which Petitioner was paroled on October 26, 2024—was custody that followed his encounter at the border and a determination of inadmissibility under § 1225(b)(1). (ECF No. 39-1 at 1; ECF No. 37-4 at 2.)

---

[7] The Opinion's citations to ECF No. 29-1 for the events of October 2024 (ECF No. 33 at 1) referred to the November 20, 2025, form, a different document. To the extent those citations suggested that the October 2024 determination appears in that exhibit, the Court notes the distinction. But the October 10, 2024, form confirms, rather than contradicts, what the Opinion found: that Petitioner was taken into custody, determined by an immigration official to be inadmissible, and issued a notice and order of expedited removal following his October 9, 2024, encounter at the border. (*Compare* ECF No. 33 at 1, *with* ECF No. 37-4 at 2.) A citation discrepancy is not a clear error of fact, and it does not warrant disturbing the judgment. Nor does the existence of a second Form I-860, dated November 20, 2025, matter. Petitioner's detention authority does not turn on which of the two forms is operative. Petitioner did not reply to the Government's submission, and his second motion identifies no defect in the October 10, 2024, form; it asserts only that the expedited-removal record remains "disputed." (ECF No. 38 at 5, 12.)

**3. *Castro***

Petitioner next argues that, under *Castro*, the record does not show that he fell within the class of noncitizens "encountered within 14 days of entry without inspection and within 100 air miles of any U.S. international land border," *Castro*, 835 F.3d at 425 (internal quotation marks omitted), because the November 13, 2025, encounter occurred "Inland" and more than thirteen months after his entry. (ECF No. 35 at 8.) The argument looks to the wrong encounter. The Opinion cited *Castro* to identify the two classes of noncitizens subject to expedited removal (ECF No. 33 at 3), and the question is whether Petitioner fell within one of them when DHS determined that he was inadmissible. The October 10, 2024, form answers that question. It records that Petitioner entered at or near Otay Mesa, California, the day before, without inspection. (ECF No. 37-4 at 2.) Petitioner's own chronology identifies the same place and date as his last entry. (ECF No. 35 at 6.) He was therefore encountered within fourteen days of entry and within one hundred air miles of the border. The Opinion described the event as an attempted entry (ECF No. 33 at 1), but nothing turns on the difference: a noncitizen who arrives in the United States, or who is present without having been admitted, is an applicant for admission, 8 U.S.C. § 1225(a)(1), and on either description Petitioner fell within one of the two classes. Nothing in *Castro* or the statute suggests that a person properly processed at that time must be encountered again within fourteen days and one hundred miles before DHS may continue to hold him under § 1225(b)(1) after a period of parole.

**4. *Lopez Salas* and the decisions of other judges in this District**

Petitioner's principal legal argument is that, three days after the Opinion, this Court held in *Lopez Salas* that detention after parole and re-custody is governed by § 1226(a) rather than § 1225(b)(1). (ECF No. 35 at 8-9.) *Lopez Salas* is not an "intervening change in the controlling

law." It is a decision of this Court issued after the Opinion, and "[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (quoting 18 J. Moore et al., *Moore's Federal Practice* § 134.02[1][d], p. 134-26 (3d ed. 2011)). More to the point, *Lopez Salas* does not conflict with the Opinion. It applied the same statutory rule to different facts.

There, the petitioner had been "released pursuant to 8 U.S.C. § 1226(a)" before he was paroled and was therefore "not in mandatory detention at the time of his parole." *Lopez Salas*, slip op. at 6. Because § 1182(d)(5)(A) returns a parolee to "the custody from which he was paroled," the Court reasoned that "the only detention to which he could be returned is the detention to which he was potentially subject at the time of his parole"—detention under § 1226(a). *Id. Lopez Salas* thus relied on *Faqirzada* for the rule that parole does not end detention under § 1225(b)(1), but held that the rule did not reach a petitioner who had been released under § 1226(a) before his parole. *See id.* at 5-6.

This case falls on the other side of that line. Petitioner's own chronology reflects that ICE issued him one-year parole on October 26, 2024 (ECF No. 35 at 5-6), after he was taken into custody at the border on October 9, 2024 (ECF No. 33 at 1). ICE's records show that he was in ICE detention when the parole was granted: he was "Released - Paroled" from the Folkston facility. (ECF No. 39-1 at 1.) Petitioner does not contend that he was released on any other basis, such as bond or recognizance under § 1226(a), before his parole. He was therefore paroled out of detention under § 1225(b)(1), and that was "the custody from which he was paroled." That is the rule of *Faqirzada*, and *Lopez Salas* leaves it intact.

Petitioner also relies on decisions of other judges of this District that, as he describes them, concluded that § 1225(b)(1)(A)(iii) cannot supply detention authority after parole, *Rivas Rodriguez v. Rokosky*, No. 25-17419, 2025 WL 3485628, at *2 (D.N.J. Dec. 3, 2025); that § 1182(d)(5)(A) does not automatically return a parolee to the threshold-of-entry posture, *A.J.R. v. Rokosky*, No. 25-17279, 2026 WL 25056, at *4-5 (D.N.J. Jan. 5, 2026); that detention reverted to § 1226 when parole ended, *Garcia-Alvarado v. Warden*, No. 25-16109, 2025 WL 3268606, at *3 (D.N.J. Nov. 24, 2025); and that § 1225 does not reach materially similar interior arrests, *Tyagi v. Soto*, No. 26-962, 2026 WL 478184, at *1 (D.N.J. Feb. 20, 2026). (ECF No. 35 at 9-10.) The Court recognizes that judges of this District have not been uniform in their treatment of these questions. But a disagreement among district judges is not a "controlling decision[]" that the Court overlooked, L. Civ. R. 7.1(i), and the Court addressed the effect of parole on the governing detention provision in *Faqirzada*, which the Opinion followed. (ECF No. 33 at 3-5.) Reconsideration is not an opportunity to relitigate that issue. *Blystone*, 664 F.3d at 415. Any such disagreement is a matter for the Court of Appeals.

Nor does the Government's later decision to proceed by NTA under INA § 240—which, Petitioner notes, did not charge him as an "arriving alien" (ECF No. 35 at 7, 9)—change the analysis. A noncitizen found to have a credible fear "shall be detained for further consideration of the application for asylum," 8 U.S.C. § 1225(b)(1)(B)(ii), and that consideration takes place in proceedings before an immigration judge. (*See* ECF No. 33 at 5 (citing *Jennings v. Rodriguez*, 583 U.S. 281, 287-88 (2018)).) Parole "shall not be regarded as an admission of the alien," and the paroled noncitizen's case "shall continue to be dealt with in the same manner as that of any other applicant for admission." 8 U.S.C. § 1182(d)(5)(A). The immigration judge accordingly found

Petitioner "inadmissible," not removable as one who had been admitted. (ECF No. 37-2 at 4.) The Court's conclusion rests on the text of the statute, not on the box checked on a charging document.

### 5. The Third Circuit's decision in *Buele Morocho*

After the briefing closed, the Third Circuit decided *Buele Morocho v. Warden Philadelphia FDC*, Nos. 26-1150 & 26-1454 (3d Cir. Aug. 28, 2026) (precedential). Although neither party has addressed it, the Court has considered whether it is an "intervening change in the controlling law." *Max's Seafood*, 176 F.3d at 677. As to the question on which the Opinion turned, it is not. *Buele Morocho* held that 8 U.S.C. § 1225(b)(2)(A) does not authorize mandatory detention of two noncitizens who entered without inspection in 2001 and 2014 and were arrested in late 2025 and early 2026, because they were not "seeking admission" within the meaning of that provision. *Buele Morocho*, slip op. at 13, 18-20. The court further held that their detention without bond hearings violated procedural due process. *Id.* at 38-42.[8]

Petitioner is not in the position of the *Buele Morocho* petitioners. He was taken into custody at the border upon entering, was determined to be inadmissible within a day, and was processed for expedited removal under § 1225(b)(1)—a provision with its own text mandating that a noncitizen be detained pending a credible fear determination and, if the noncitizen is found to have a credible fear, "for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii), (iii)(IV).[9] *Buele Morocho* does not purport to decide whether a noncitizen who

---

[8] The consolidated appeals involved Gabriel Antonio Buele Morocho and Wanderson Lopes de Andrade. The majority does not state how long either was detained before the district courts granted relief. *See Buele Morocho*, slip op. at 5-7. The dissent reports 56 days for Buele Morocho and 24 days for Lopes de Andrade. *Id.* at 46 (Mascott, J., dissenting).

[9] The Government also cites *Matter of M-S-*, 27 I&N Dec. 509 (A.G. 2019), *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), and *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025). (ECF No. 39 at 1-2.) The Court does not rely on those decisions. Its conclusion rests on the text of 8 U.S.C. §§ 1182(d)(5)(A) and 1225(b)(1), and the Third Circuit has since declined to defer to *Yajure Hurtado*'s reading of § 1225(b)(2)(A). *See Buele Morocho*, slip op. at 11 n.8.

was processed under § 1225(b)(1) at the border and later paroled under § 1182(d)(5)(A) is detained under § 1225(b)(1) or § 1226(a) when parole ends. The statutory analysis in the Opinion therefore stands. The Court addresses the decision's due process holding below. *See infra* Part III.B.4.

In sum, Petitioner has not identified an intervening change in the controlling law, new evidence that was unavailable when the Court ruled, or a clear error of law or fact or manifest injustice. *Max's Seafood*, 176 F.3d at 677. Because the Court discerns no error, there is likewise no "mistake" to correct under Rule 60(b)(1). The alternative request to vacate the judgment and order supplemental briefing on the chronology (ECF No. 35 at 11) is also denied; the chronology is fully developed on this record. The first motion is denied.

**B. The Second Motion (ECF No. 38)**

**1. Jurisdiction**

Petitioner was transferred to Arizona before he filed the second motion. (ECF No. 37 at 2; ECF No. 39-1 at 1.) The transfer does not deprive the Court of jurisdiction over it. Jurisdiction attached when Petitioner filed his habeas petition in this District, and it is not defeated by his later transfer. *See Argueta Anariba*, 17 F.4th at 445-47; *see also Ex parte Endo*, 323 U.S. 283, 304-07 (1944). A Rule 60(b) motion is a new habeas petition only if it asserts a "claim"—a new ground for relief or an attack on the Court's earlier resolution of a claim on the merits. *See Gonzalez*, 545 U.S. at 530-32. Petitioner's motion instead offers new facts—the approval of his I-360 petition and the passage of time—as reasons to reopen a judgment on claims he already pleaded: his entitlement to a custody hearing, the effect of his SIJ status, and the duration of his detention. (*See*

ECF No. 33 at 5-7.) Under *Argueta Anariba*, that is a true Rule 60(b) motion, and the Court may decide it. 17 F.4th at 442-47.[10]

**2. The I-797 approval notice**

The Government does not dispute the authenticity of the Form I-797 approval notice, and the Government relies on its terms. (ECF No. 39 at 2.) The Court therefore grants leave to supplement the record with the notice and has considered it and the parties' arguments about it.[11] The notice does not change the result.

The notice reflects that USCIS approved Petitioner's Form I-360 petition, which it received on October 23, 2025, and classified him as a Special Immigrant Juvenile, class SL6. (ECF No. 38 at 16.) Petitioner acknowledges the limits of that approval: he "does not ask the Court to hold that I-360 approval is a visa, that it grants lawful permanent residence, or that it automatically cancels removal or compels release." (*Id.* at 2.) The notice itself states that "[t]he approval of this visa petition does not in itself grant any immigration status and does not guarantee that the alien beneficiary will subsequently be found to be eligible for a visa, for admission to the United States, or for an extension, change, or adjustment of status." (*Id.* at 16.)

The Opinion already considered, and rejected, the contention that SIJ status exempts Petitioner from mandatory detention. (ECF No. 33 at 5-6 & n.1.) It held that SIJ status does not

---

[10] The transfer would not, however, permit the Court to adjudicate a new petition challenging Petitioner's present confinement in Arizona. A habeas petition challenging present physical confinement must generally name the immediate custodian and be filed in the district of confinement. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434-35, 443 (2004).

[11] Rule 6(b)(2) forbids the Court from extending the time to act under Rule 59(e), and the Government does not argue that Petitioner's May 25, 2026, supplement is untimely as an addition to a Rule 59(e) motion filed in March. (The certificate of service states that Petitioner filed the motion on May 22, 2026 (ECF No. 38 at 15); the docket reflects May 25, and nothing turns on the difference.) Because the notice does not change the outcome, the Court need not decide whether it may be considered under Rule 59(e) rather than under Rule 60(b).

render a noncitizen lawfully present or prevent the Government from effecting removal; that it does not exempt a noncitizen from the removal or detention provisions of the immigration laws; and that 8 U.S.C. § 1232(c)(2)(B) does not displace § 1225(b)(1) for a non-minor such as Petitioner. (*Id.*) The Opinion resolved that claim on Petitioner's own premise that he held SIJ status when he was paroled. (*Id.* at 5.) The notice shows that USCIS did not approve his petition until May 11, 2026. (ECF No. 38 at 16.) The distinction does not matter, because the Opinion held that SIJ status, even if held, does not exempt a noncitizen from mandatory detention. An approval that makes the premise of the earlier argument true does not change the law that governed it. Petitioner's characterization of the approval as a "new material event" (ECF No. 38 at 2, 8) is therefore beside the point.

Petitioner invokes 8 U.S.C. § 1255(h)(1), under which a special immigrant juvenile is deemed "paroled into the United States" for purposes of adjustment of status. (ECF No. 38 at 8.) But the statute makes that so only "for purposes of subsection (a)"—the adjustment provision—not for purposes of the detention provisions at issue here. 8 U.S.C. § 1255(h)(1). And Petitioner acknowledges that the Third Circuit has not held SIJ recipients categorically exempt from removal but has held that Congress intended to give them an opportunity to pursue adjustment. (ECF No. 38 at 8 (citing *Cortez-Amador v. Att'y Gen.*, 66 F.4th 429, 433 n.12 (3d Cir. 2023)); *see also* ECF No. 33 at 5-6.) A noncitizen who remains removable also remains subject to the detention provisions that attend removal. (ECF No. 33 at 5-6.) The Government points out that, on the Visa Bulletin it cites, it appears that Petitioner's October 23, 2025, priority date will not be reached for years. (ECF No. 39 at 2 & n.2.) Petitioner anticipated the point and argues that it supports custody review rather than "open-ended detention." (ECF No. 38 at 10.) But the question under

§ 1225(b)(1) is not whether custody review would be desirable; it is whether the statute authorizes detention, and it does.

Petitioner also argues that the approval gives him "a concrete reason to appear" and so bears on flight risk. (ECF No. 38 at 9.) That may matter to an individualized custody determination, but § 1225(b)(1) mandates detention of a noncitizen in credible fear proceedings without regard to flight risk or danger. 8 U.S.C. § 1225(b)(1)(B)(ii), (iii)(IV); *see Jennings*, 583 U.S. at 287-88, 297. The only avenue for release is discretionary parole under § 1182(d)(5)(A), a decision this Court lacks jurisdiction to review. (ECF No. 33 at 4-5); 8 U.S.C. § 1252(a)(2)(B)(ii); *Ashish v. Att'y Gen.*, 490 F. App'x 486, 487 (3d Cir. 2013). Here, Petitioner disclaims any request that the Court order parole or deferred action. (ECF No. 38 at 10.)

### 3. The request for a statement of custody authority and production of records

Petitioner also asks the Court to require the Government to identify the operative detention authority and to produce a list of custody-related records. (ECF No. 38 at 11, 13-14.) The request is denied. The Government has identified its authority: Petitioner is detained under 8 U.S.C. § 1225(b)(1)(B)(ii). (ECF No. 39 at 1.) And the operative documents are already in the record—the October 10, 2024, and November 20, 2025, Forms I-860, the NTA, and the credible fear and referral records (ECF Nos. 29-1 to 29-5, 37-4); the immigration judge's order (ECF No. 37-2); and ICE's detention history (ECF No. 39-1). Petitioner's suggestion that no NTA was filed with the immigration court (ECF No. 38 at 6, 11) is belied by that record: the Elizabeth Immigration Court conducted removal proceedings "[i]nitiated by the Department of Homeland Security," adjudicated Petitioner's applications, and entered an order on March 13, 2026, from which Petitioner appealed. (ECF No. 37-2 at 4; ECF No. 37-3 at 2.) In any event, a habeas petitioner "is not entitled to discovery as a matter of ordinary course" and the Court may authorize it only for

good cause. *Bracy v. Gramley*, 520 U.S. 899, 904, 908-09 (1997); Rules Governing § 2254 Cases 1(b), 6(a). Petitioner has not shown good cause, particularly where the Court has denied the petition and closed the file.

### 4. Prolonged detention

Petitioner's final argument is that continued detention without a bond hearing now violates due process because it has exceeded six months, may continue for some time, and rests on a disputed record. (ECF No. 38 at 12-13.) The Opinion rejected the same claim "at this time" because Petitioner had then been detained for only about three months. (ECF No. 33 at 6-7.) Petitioner now offers the passage of time as a reason to reopen the judgment, and he must therefore show the "extraordinary circumstances" that Rule 60(b)(6) requires. *Gonzalez,* 545 U.S. at 535.

As in the Opinion, the Court assumes without deciding that unduly prolonged detention under § 1225(b)(1) can at some point violate due process. (*See* ECF No. 33 at 6.) The inquiry is fact specific. In this Circuit, courts consider the duration of detention, the likely duration of continued detention, the reasons for any delay, and the conditions of confinement. *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 210-13 (3d Cir. 2020) (addressing 8 U.S.C. § 1226(c)); *see also Tuser E. v. Rodriguez*, 370 F. Supp. 3d 435, 442 (D.N.J. 2019).

On the record before the Court, Petitioner has not shown extraordinary circumstances. When the record closed on June 22, 2026, he had been in custody for 221 days, about seven months. (ECF No. 39 at 3; ECF No. 39-1 at 1.)[12] That is longer than the period at issue in the Opinion, but courts in this District have found still longer periods insufficient to support an as-applied challenge to detention under § 1225(b). (*See* ECF No. 39 at 3 (citing *Adel G. v. Warden,*

---

[12] The Government notes that Petitioner was also detained for about eleven days in October 2024. (ECF No. 39 at 3 n.4; ECF No. 39-1 at 1.) The Court need not decide whether prior periods of detention should be aggregated. Even counting them, the total was under eight months.

*Essex Cnty. Jail*, No. 19-13512, 2020 WL 1243993, at *2 (D.N.J. Mar. 13, 2020) (collecting cases)).) Nor does the record suggest that continued detention is likely to be indefinite or that either side has caused unreasonable delay. The immigration judge reached the merits within about four months of Petitioner's re-detention, and Petitioner appealed within weeks. (ECF No. 37-2 at 4, 6; ECF No. 37-3 at 2.) Petitioner is entitled to pursue that appeal, and the Government has not suggested otherwise. And although Petitioner states generally that civil detention is a serious deprivation of liberty (ECF No. 38 at 12-13), he does not contend that the conditions of his confinement are punitive.[13] The I-360 approval does not alter this balance, for the reasons given above. Finally, even if the Court were to find a violation, a hearing is the remedy on which the authorities Petitioner cites converge (*id.* at 13 (citing *German Santos*, 965 F.3d at 213, and *Tuser E.*, 370 F. Supp. 3d at 449-50)), and Petitioner himself asks, at a minimum, for a prompt individualized custody hearing (*id.* at 13-14).

The Court emphasizes the limits of this ruling. The record closed on June 22, 2026; the docket reflects no submission since, and months have passed. Detention that Petitioner has not shown to be unreasonable at seven months may become so with time, and the facts that would bear on that question—Petitioner's present custody status and conditions, the status of his BIA appeal, and the reasons for any further delay—are not before the Court. The Third Circuit's decision in *Buele Morocho*, issued after the briefing closed, also bears on the framework. There, the court held that detaining two long-term residents without bond hearings violated procedural due process, and it distinguished *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), as concerning a noncitizen at the "threshold of initial entry." *See Buele Morocho*, slip op. at 38-42.

---

[13] ICE's detention history carries a notation that Petitioner "has Segregation History." (ECF No. 39-1 at 1.) Neither party addresses it, and nothing in the record indicates when, why, or for how long any segregation occurred. The Court therefore draws no inference from it.

But those petitioners had entered without inspection in 2001 and 2014 and were arrested in late 2025 and early 2026, years later. Petitioner was taken into custody at the border in October 2024 and was thereafter paroled for about a year. Whether and how *Buele Morocho*'s due process analysis applies to a noncitizen in those circumstances who is detained under § 1225(b)(1)(B), and what it means for the length of detention that is reasonable before a hearing is required, are questions that neither party has briefed. The Court declines to resolve them on a stale record and in the posture of a Rule 60(b)(6) motion.

The Rule 60(b)(6) motion is therefore denied without prejudice. Nothing in this Opinion precludes Petitioner from seeking relief on a current record, whether by a renewed motion in this matter supported by changed circumstances or by a new petition challenging his present detention, which must be filed in the district of confinement and name his immediate custodian. *See Padilla*, 542 U.S. at 434-35, 443. The Court expresses no view on whether, on such a record, Petitioner's continued detention would comport with due process.

## IV. CONCLUSION

For the reasons expressed above, Petitioner's motion for reconsideration (ECF No. 35) is **DENIED**. Petitioner's second motion (ECF No. 38) is **GRANTED** to the extent that it seeks leave to supplement the record with the May 11, 2026, Form I-797 approval notice, and is otherwise **DENIED**; the alternative request for relief from judgment under Rule 60(b)(6) is denied without prejudice. An order consistent with this Opinion will be entered.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: 10/27/26